**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**JOHN D. GARLAND,** **CASE NO.:** 0:26-cv-63023

*Plaintiff,*

v.

**TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, and EXPERIAN INFORMATION SOLUTIONS, INC.,**

*Defendants.*

_______________________________________/

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff, JOHN D. GARLAND ("Plaintiff" or "Mr. Garland") brings this action against TRANS UNION, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (hereinafter "FCRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and under 15 U.S.C. § 1681p.

3. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida, where Plaintiff resides and where Defendants published the Inaccurate Information.

**PARTIES**

4. Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant, Trans Union, LLC ("Trans Union") is a limited liability company organized under the laws of the State of Delaware, whose members are citizens of the State of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

6. Defendant, Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

7. Defendant, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in Costa Mesa, California. Experian is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

8. Trans Union, Equifax, and Experian shall collectively be referred to as the Credit Reporting Agencies ("the CRAs").

## FACTUAL ALLEGATIONS

### *A. Statutory and Industry Background*

9. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or

expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

i. credit or insurance to be used primarily for personal, family, or household purposes;
ii. employment purposes; or
iii. any other purpose authorized under section 1681b of this title.

15 . S.C. § 1681a(d)(1).

10. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

11. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

12. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Experian, and Equifax (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

13. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed August 28, 2026).

14. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer dispute related processes. Id.

15. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e-OSCAR.

16. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

17. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See https://www.e-oscar.org/getting-started (last accessed August 28, 2026).

18. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

19. Trans Union, Equifax, and Experian each require data furnishers that report to them to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed August 28, 2026).

20. "If the reinvestigation does not resolve the dispute," § 1681i(b) allows a consumer to "file a brief statement setting forth the nature of the dispute." If a consumer elects to do so, "unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof." Id. § 1681i(c). Negligent violations of these provisions are actionable under § 1681o; willful violations carry additional penalties and are actionable under § 1681n. Chaitoff v. Experian Info. Sols., Inc., 79 F.4th 800, 809 (7th Cir. 2023).

***B. The GM Financial Account and the Cancelled Automatic Payment Plan***

21. On or about December 31, 2019, Plaintiff entered into a retail installment contract for the purchase of a motor vehicle primarily for personal, family, and household purposes. The contract was assigned to GM Financial, which reports the account to the CRAs as AmeriCredit/GM Financial, account number ending in 0813 (the "GM Financial Account").

22. The GM Financial Account was financed in the original amount of $35,378.00, payable in 66 monthly installments of $595.00.

23. Plaintiff enrolled in GM Financial's automatic payment plan, under which GM Financial drafted each monthly installment automatically.

24. For more than five years Plaintiff paid every installment on time. The CRAs' own records reflect a timely payment every month from the inception of the loan through May 2025.

25. Without notice to Plaintiff, GM Financial stopped drafting the automatic payments before the final installments came due.

26. GM Financial did not telephone, email, text, or write to Plaintiff to tell him that the automatic payments had stopped. Plaintiff's telephone numbers, email address, and mailing address had not changed, and GM Financial had used them to contact him for promotional purposes.

27. Because GM Financial cancelled the automatic payment plan without telling Plaintiff, one installment went unpaid, and the CRAs reported the GM Financial Account as thirty days past due for June 2025.

28. Plaintiff paid the GM Financial Account in full on July 11, 2025. The CRAs report the account as paid and closed with a zero balance.

29. On June 27, 2025, at 8:42 a.m., Plaintiff faxed GM Financial a written dispute of the cancellation of his automatic payment plan and of the resulting derogatory reporting. GM Financial told Plaintiff that its internal department would correct the error and respond within thirty days. GM Financial never responded.

30. On October 2, 2025, GM Financial representatives gave Plaintiff contradictory accounts of that fax within the same day, first stating that GM Financial never received it, and later confirming that GM Financial received it on June 27, 2025 at 8:42 a.m.

31. On October 6, 2025, GM Financial's Automatic Payment Plan department wrote to Plaintiff: "I checked your account and also all the documents in our imaging system and we do not have an autopay agreement form on file for you. It does not show your account was ever on autopay."

***C. The Inaccurate Information***

32. The information the CRAs report about the GM Financial Account is inaccurate, incomplete, and internally contradictory (the "Inaccurate Information"). Each CRA reports that the GM Financial Account was thirty days past due for June 2025 and, in the same tradeline, that the account was paid as agreed.

33. Trans Union reports the GM Financial Account under the heading "Accounts with Adverse Information," with a Pay Status of "Paid, Closed; was Paid as agreed," and, within the same tradeline, a payment rating of "30" for June 2025 with $506.00 past due.

34. Equifax reports the GM Financial account status as "Pays as agreed" and shows in the payment history a 30-days-past-due entry for June 2025, with a past-due amount of $506.

35. Experian reports the GM Financial Account as "Potentially Negative," with a status of "Paid, Closed" and the notation "30 days past due as of Jun 2025."

36. Because each CRA reports both that the GM Financial Account was paid as agreed and that it was thirty days past due, at least one of those two statements is false, and the tradeline is not accurate as reported.

37. The Inaccurate Information is materially misleading. It converts a sixty-six month payment history without a single late payment into a derogatory account, and it does so on the last active month of a loan Plaintiff paid in full.

***D. Plaintiff's Disputes and the CRAs' Failure to Investigate***

38. Plaintiff tried to have the information corrected by sending a written dispute dated November 7, 2025 to each of the CRAs, which he mailed by certified mail on November 12, 2025 (the "Initial Disputes"). A true and correct copy of the Initial Disputes, together with the certified mail receipts and delivery confirmations, is attached as Composite Exhibit "A."

39. The United States Postal Service delivered the Initial Dispute to Experian at Allen, Texas on November 18, 2025, to Trans Union at Chester, Pennsylvania on November 20, 2025, and to Equifax at Atlanta, Georgia on November 15, 2025 Composite Exhibit "A."

40. In the Initial Disputes Plaintiff identified the GM Financial Account by account number, explained that the June 2025 delinquency was caused by GM Financial's unannounced cancellation of his automatic payment plan, and asked each CRA to delete the late payment notation.

41. Based on updated consumer reports and investigation results from the CRAs, the Defendants continued to report the Inaccurate Information after receiving the Initial Disputes.

42. Trans Union responded to the Initial Dispute on or about December 5, 2025. Trans Union did not delete or correct the Inaccurate Information. A true and correct copy of Trans Union's response is attached as Exhibit "B."

43. Experian issued dispute results dated January 16, 2026. Experian reported the result as "Updated" and did not delete the June 2025 delinquency. Experian's own results state that the GM Financial Account remains "30 days past due as of Jun 2025." A true and correct copy of Experian's dispute results is attached as Exhibit "C."

44. Equifax issued dispute results dated November 26, 2025. Equifax reported the result as "Updated" and shifted an inaccurate late mark from June 2025 to September 2025. Equifax's dispute results stated that the GM Financial verified to Equifax that the status were reported correctly. A true and correct copy of Equifax's dispute results is attached as Exhibit "D."

45. Upon receiving the Initial Disputes, the CRAs relayed that correspondence to GM Financial, which failed to conduct a reasonable investigation, and then furnished the same inaccurate information back to the CRAs.

46. After Plaintiff asked that the late payment notation be removed, Trans Union, Equifax, and Experian failed to evaluate or consider any of the specific information, claims, and evidence Plaintiff provided. Neither CRA obtained GM Financial's autopay enrollment or cancellation records, and neither made any attempt to substantially or reasonably verify GM Financial's representation that Plaintiff was thirty days delinquent in June 2025.

47. Neither CRA reconciled the contradiction on the face of its own tradeline between a pay status of paid as agreed and a thirty-day delinquency, a contradiction that required no investigation outside the four corners of the CRA's own file to detect.

48. As a result, Plaintiff sent second written disputes to TransUnion and Equifax dated January 9, 2026, which he mailed by certified mail on January 14, 2026 (the "Second Disputes"). Plaintiff also sent a second written dispute to Experian dated January 26, 2026, which he mailed by

certified mail on January 30, 2026 (also the "Second Disputes"). True and correct copies of the Second Disputes and the certified mail receipts are attached as Composite Exhibit "E."

49. The Second Disputes added information to the Initial Disputes. Plaintiff advised Experian and TransUnion that the June 2025 delinquency—and Equifax's "30 days past due" notation, now moved to September 2025—was an error caused by GM Financial's handling of his automatic payment plan. He also advised that he had faxed a dispute to GM Financial on June 27, 2025, and that, despite proof of those communications, the CRA continued to report the account as thirty days past due while also reporting it as paid and closed.

50. The Second Disputes demanded that each CRA conduct a reasonable reinvestigation, delete the inaccurate late payment notation for June 2025 (Experian and Trans Union) and September 2025 (Equifax), permanently remove any related derogatory coding, and correct the tradeline to reflect a paid and closed status with a perfect payment history for the year 2025.

51. The Second Disputes further requested that, if the CRA continued to refuse to delete the Inaccurate Information, a brief statement explaining the circumstances be added to Plaintiff's credit file, and demanded that the CRA provide its method of verification and the name, business address, and telephone number of each furnisher it contacted.

52. Even after receiving the Second Disputes, with details describing why the reporting was inaccurate, Trans Union relayed that correspondence to GM Financial, which once again failed to conduct a reasonable investigation and once again furnished inaccurate information back to Trans Union.

53. Even after receiving the Second Disputes, with details describing why the reporting was inaccurate, Equifax relayed that correspondence to GM Financial, which once again failed to

conduct a reasonable investigation and once again furnished inaccurate information back to Equifax.

54. Even after receiving the Second Disputes, with details describing why the reporting was inaccurate, Experian relayed that correspondence to GM Financial, which once again failed to conduct a reasonable investigation and once again furnished inaccurate information back to Experian.

55. Trans Union responded to the Second Dispute on or about February 5, 2026. Trans Union did not add the requested statement of dispute, and the GM Financial Account continued to report a thirty-day delinquency for June 2025. A true and correct copy of Trans Union's response is attached as Exhibit "F."

56. After the Second Disputes, Plaintiff reviewed his updated consumer reports and saw that the Inaccurate Information remained and that no consumer statement had been added to his file by either CRA.

57. On or about April 8, 2026, Plaintiff telephoned the CRAs and again disputed the GM Financial Account orally (the "Third Disputes"). The representatives Plaintiff reached could not explain the reporting, blamed one another for it, and did nothing beyond what appeared on the screen in front of them.

58. The Initial Disputes, the Second Disputes, and the Third Disputes are referred to collectively herein as the "Collective Disputes."

59. Trans Union continues to report the Inaccurate Information. Plaintiff's Trans Union consumer disclosures dated June 4, 2026 and June 17, 2026, each of which postdates every one of the Collective Disputes, report the GM Financial Account under "Accounts with Adverse

Information" with a payment rating of "30" for June 2025. A true and correct copy of those disclosures is attached as Composite Exhibit "G."

60. Neither Trans Union, Equifax, nor Experian has noted anywhere in Plaintiff's file that the GM Financial Account is disputed by the consumer.

61. Neither Trans Union, Equifax, nor Experian has added the brief statement of dispute that Plaintiff requested.

62. Three rounds of disputes over nine months, two of them in writing and delivered by certified mail, produced no change of any kind to the GM Financial Account at either Defendant. Neither Defendant deleted the delinquency, corrected it, annotated it as disputed, or added the statement Plaintiff asked for.

63. The passage of time has made the Trans Union reporting worse rather than better. Because the July 2025 rating has aged out of Trans Union's sixty-six month payment grid, the June 2025 delinquency is now the final payment rating Trans Union reports on the account.

***E. Damages***

64. Plaintiff had built and maintained a credit profile without a single late payment. After Defendants began reporting and continued to report the Inaccurate Information, his credit score fell from approximately 800 to approximately 700.

65. Plaintiff's automobile insurance premium increased. Plaintiff was in no accident during the preceding year and no other circumstance accounts for the increase.

66. Plaintiff applied for and obtained credit while the Inaccurate Information was being reported, and lost the ability to obtain credit on the terms that his payment history warranted.

67. Plaintiff spent his own time and money disputing the Inaccurate Information with GM Financial and with each of the CRAs over a period of more than a year.

68. Unless and until the Inaccurate Information is no longer a factor in Plaintiff being denied credit, being granted credit at increased rates, losing the opportunity to benefit from credit, or Plaintiff being forced to procure a co-signer to be granted any credit under any terms, these economic losses will continue.

## COUNT I – VIOLATIONS OF 15 U.S.C. § 1681i (AGAINST TRANS UNION)

69. Plaintiff incorporates by reference the allegations in paragraphs 1 through 5 and 7 through 68.

70. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

71. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

72. During the relevant time frame, Trans Union received Plaintiff's Collective Disputes regarding the accuracy and completeness of the GM Financial Account appearing on Plaintiff's consumer disclosure.

73. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the disputed information and by failing to correct, update, or delete inaccurate information in Plaintiff's credit file after receiving actual notice of the inaccuracies contained therein.

74. Trans Union unreasonably relied on information provided by GM Financial when readily verifiable information that Plaintiff provided in the Collective Disputes placed Trans Union on notice that GM Financial's information was inaccurate and unreliable.

75. Trans Union's reinvestigation was unreasonable for the additional reason that the contradiction between the reported pay status and the reported delinquency was apparent from Trans Union's own file and required no outside verification to detect.

76. Trans Union also violated 15 U.S.C. § 1681i(c) by failing to add the statement of dispute that Plaintiff requested in the Second Dispute and by failing to clearly note in subsequent consumer reports that the GM Financial Account is disputed by Plaintiff.

77. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

78. Alternatively, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

79. As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with the Inaccurate Information being sent to third parties, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, mental and emotional distress of being granted credit at increased rates, an increase in his insurance premium, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT II – VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**(AGAINST TRANS UNION)**

80. Plaintiff incorporates by reference the allegations in paragraphs 1 through 5 and 7 through 68.

81. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

82. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

83. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

84. No reasonable procedure would permit a consumer reporting agency to publish a tradeline that reports, at the same time, that an account was paid as agreed and that it was thirty days past due.

85. Any user of a credit report who viewed the GM Financial Account saw the Inaccurate Information.

86. Even after the Collective Disputes, Trans Union continues to report the GM Financial Account with the Inaccurate Information and without the requested statement of dispute.

87. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

88. In the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

89. As a result of Trans Union's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, mental and emotional distress of being granted credit at increased rates, an increase in his insurance premium, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. § 1681i (AGAINST EQUIFAX)

90. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, and 8 – 68.

91. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

92. At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

93. During the relevant time frame, Equifax received Plaintiff's Collective Disputes regarding the accuracy and completeness of the GM Financial Account appearing on Plaintiff's consumer disclosure.

94. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

95. Equifax also violated 15 U.S.C. § 1681i(c) by failing to add the statement of dispute that Plaintiff requested in the Second Dispute and by failing to clearly note in subsequent consumer reports that the GM Financial Account is disputed by Plaintiff.

96. Additionally, Equifax unreasonably relied on information provided by GM Financial when readily verifiable information that Plaintiff provided in the Collective Disputes placed Experian on notice that GM Financial's information was inaccurate and unreliable.

97. Even after Plaintiff's Collective Disputes the GM Financial's account is still being reported with the Inaccurate Information.

98. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

99. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

100. As a result of Equifax's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with the Inaccurate Information being sent to third parties, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, mental and emotional distress of being granted credit at increased rates, an increase in his insurance premium, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT IV – VIOLATIONS OF 15 U.S.C. §1681e(b)**
**AGAINST EQUIFAX**

101. Plaintiff incorporates by reference her allegations in paragraphs 1 – 4, 6, and 8 – 68.

102. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

103. At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

104. During the relevant time frame, Equifax received Plaintiff's Collective Disputes regarding the accuracy of the account reported by GM Financial's on Plaintiff's credit report.

105. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

106. Any user of a credit report who viewed the GM Financial Account saw the Inaccurate Information.

107. Even after the Collective Disputes, Equifax continues to report the GM Financial Account with the Inaccurate Information and without the requested statement of dispute.

108. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

109. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

110. As a result of Equifax's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, loss of the ability to purchase and benefit from credit, mental and emotional distress of being granted credit at increased

rates, an increase in his insurance premium, damage to his reputation for credit worthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT V – VIOLATIONS OF 15 U.S.C. § 1681i**
**(AGAINST EXPERIAN)**

111. Plaintiff incorporates by reference the allegations in paragraphs 1 through 6 and 8 through 68.

112. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

113. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

114. During the relevant time frame, Experian received Plaintiff's Collective Disputes regarding the accuracy and completeness of the GM Financial Account appearing on Plaintiff's consumer disclosure.

115. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the disputed information and by failing to correct, update, or delete inaccurate information in Plaintiff's credit file after receiving actual notice of the inaccuracies contained therein.

116. Experian unreasonably relied on information provided by GM Financial when readily verifiable information that Plaintiff provided in the Collective Disputes placed Experian on notice that GM Financial's information was inaccurate and unreliable.

117. Experian reported the result of its reinvestigation as "Updated" while leaving the disputed delinquency in place, which neither corrected the Inaccurate Information nor resolved the dispute.

118. Experian also violated 15 U.S.C. § 1681i(c) by failing to add the statement of dispute that Plaintiff requested in the Second Dispute and by failing to clearly note in subsequent consumer reports that the GM Financial Account is disputed by Plaintiff.

119. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

120. In the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121. As a result of Experian's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, loss of the ability to purchase and benefit from credit, mental and emotional distress of being granted credit at increased rates, an increase in his insurance premium, damage to his reputation for credit worthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VI – VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**(AGAINST EXPERIAN)**

122. Plaintiff incorporates by reference the allegations in paragraphs 1 through 6 and 8 through 68.

123. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

124. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

125. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

126. No reasonable procedure would permit a consumer reporting agency to publish a tradeline that reports, at the same time, that an account was paid and closed and that it was thirty days past due as of the final month of the loan.

127. Any user of a credit report who viewed the GM Financial Account saw the Inaccurate Information.

128. Even after the Collective Disputes, Experian continues to report the GM Financial Account with the Inaccurate Information and without the requested statement of dispute.

129. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

130. In the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

131. As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, loss of the

ability to purchase and benefit from credit, mental and emotional distress of being granted credit at increased rates, an increase in his insurance premium, damage to his reputation for credit worthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief as the Court deems equitable and just under the circumstances.

**JURY DEMAND**

132. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SUE YOUR CREDIT REPORT**
**A LAW FIRM**
*/s/ Joshua Feygin*
Joshua Feygin, Esq.
Fla. Bar No. 124685
4601 Sheridan Street, Suite 205
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357
josh@sueyourcreditreport.com
paralegal@jfeyginesq.com
Attorney for Plaintiff

**DEBT SHIELD LAW**
*/s/ Kevin Rajabalee*
Kevin Rajabalee, Esq.
Fla. Bar No. 119948
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Main: (754) 800-5299
Direct: (954) 667-3096
Fax: (305) 503-9457
kevin@debtshieldlaw.com
dayami@debtshieldlaw.com
service@debtshieldlaw.com
Co-Counsel for Plaintiff